1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SHERRY LYNN JONES,                           No.  2:19-cv-01273 AC

12                Plaintiff,

13        v.                                      **ORDER**

14   ANDREW SAUL, Commissioner of Social
     Security,
15
                  Defendant.
16

17   _____

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying her application for Disabled Widow's Benefits ("DWB"), a type of

20   Disability Insurance Benefits ("DIB"), pursuant to Title II of the Social Security Act.  42 U.S.C.

21   §§ 402(e), 416, 423.[1]  For the reasons that follow, plaintiff's motion for summary judgment will

22   be DENIED, and defendant's cross-motion for summary judgment will be GRANTED.

23                          I.  PROCEDURAL BACKGROUND

24        Plaintiff applied for benefits on July 27, 2017.  Administrative Record ("AR") 12, 206-

25   ////

26   _____

27   [1]  Disabled Widow benefits are a type of Title II benefit.  42 U.S.C.A. 42 U.S.C. § 402(e).  The
     same disability definition applies but the date last insured is determined by the deceased's work
28   history.  Id. at § 402(e)(1)(B).

                                             1

214.[2]  The disability onset date was alleged to be April 17, 2017.  AR 64.  The application was

disapproved initially and on reconsideration.  AR 12.  On January 29, 2019, ALJ Carol L. Buck

presided over the hearing on plaintiff's challenge to the disapprovals.  AR 28 – 62 (transcript).

Plaintiff, who appeared with her counsel "Ms. Alberts," was present at the hearing.  AR 30.

Cheryl Chandler, a Vocational Expert ("VE"), also testified.  Id.

On February 13, 2019, the ALJ found plaintiff "not disabled" under Sections 202(e) and

223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d).  AR 12-23 (decision), 24-27 (exhibit

list).  On July 19, 2019, the Appeals Council denied plaintiff's request for review, leaving the

ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-3.

Plaintiff filed this action on July 9, 2019.  ECF No. 1; see 42 U.S.C. § 405(g).  The parties

consented to the jurisdiction of the magistrate judge.  ECF No. 29.  The parties' cross-motions for

summary judgment, based upon the Administrative Record filed by the Commissioner, have been

fully briefed.  ECF Nos. 14 (plaintiff's summary judgment motion), 18 (Commissioner's

summary judgment motion), 19 (plaintiff's reply), 24 (Commissioner's sur-reply), 28 (plaintiff's

response to sur-reply).

## II.  FACTUAL BACKGROUND

Plaintiff was born in 1959, and accordingly was, at age 57, a person of advanced age

under the regulations, when she filed her application.[3]  AR 63.  Plaintiff has at least a high school

education and can communicate in English.  AR 232-34.  Plaintiff worked as a financial

representative at a hospital for approximately two weeks in 2017 and as a human resources

manager at a nursing home from 2004-2016.  AR 234.

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is

supported by substantial evidence and if the Commissioner applied the correct legal standards."

Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  Andrews

---

[2]  The AR is electronically filed at ECF Nos. 11-3 to 11-14 (AR 1 to AR 617).  A supplemental
certified administrative record ("SAR") is filed at ECF No. 23-1 (AR 624-644).
[3]  See 20 C.F.R. § 404.1563(e) ("person of advanced age").

1  v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

2        Substantial evidence is "more than a mere scintilla," but "may be less than a

3  preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such

4  evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

5  Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the

6  record can constitute substantial evidence, only those 'reasonably drawn from the record' will

7  suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

8  Although this court cannot substitute its discretion for that of the Commissioner, the court

9  nonetheless must review the record as a whole, "weighing both the evidence that supports and the

10  evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of

11  Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995

12  (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts

13  from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of

14  supporting evidence.").

15        "The ALJ is responsible for determining credibility, resolving conflicts in medical

16  testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156

17  (9th Cir. 2001), as amended on reh'g (Aug. 9, 2001). "Where the evidence is susceptible to more

18  than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion

19  must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court

20  may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a

21  ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v.

22  Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the

23  ALJ's credibility decision based on evidence that the ALJ did not discuss").

24        The court will not reverse the Commissioner's decision if it is based on harmless error,

25  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

26  ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

27  2006) (quoting Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see

28  also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

IV.  RELEVANT LAW

To qualify for DWB, a claimant must be the unmarried widow of a deceased insured and, if under a disability, must have attained the age of 50.  42 U.S.C.A. 42 U.S.C. § 402(e).  The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen v. Yuckert, 482 U.S. 137, 146 (1987) n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the

national economy."  Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146

n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1.  It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50.  The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(3) of the Social Security Act.

> 2. The prescribed period ends on September 30, 2017.

> 3. [Step 1] The claimant has not engaged in substantial gainful activity since April 17, 2017, the alleged onset date (20 CFR 404.1571 et seq.).

> 4. [Step 2] The claimant has the following severe impairments: diabetes mellitus, lumbar/lumbosacral region spondylosis without myelopathy or radiculopathy, obesity, and right hip pain and right shoulder pain due to mild osteoarthritis (20 CFR 404.1520(c)).

> 5. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

> 6.  [Residual Functional Capacity ("RFC")]  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasionally climb, balance, stoop, kneel, crouch and crawl; and avoid hazards (machinery, heights).

> 7. [Step 4] The claimant is capable of performing past relevant work as a human resource manager (manager personnel), office manager, and billing clerk.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

> 8.  The claimant has not been under a disability, as defined in the Social Security Act, from April 17, 2017, through the date of this decision (20 CFR 404.1520(5)).

AR 14-22.

## VI.  ANALYSIS

Plaintiff alleges that this case should be remanded to the ALJ because (1) the

administrative record is incomplete for judicial review; (2) the ALJ erroneously failed to include

fibromyalgia, lupus, and sacro-iliac joint dysfunction as severe impairments; (3) the ALJ failed to

1  give clear and convincing reasons for rejecting the opinion of her treating physician; (4) ALJ

2  failed to give clear and convincing reasons for rejecting plaintiff's subjective testimony; (5) the

3  RFC assessment lacks substantial evidentiary support and is based on legal errors; and (6) the

4  finding that plaintiff can perform past relevant work lacks substantial evidentiary support.  ECF

5  No. 14.

6       A.  The Record is Complete for Review

7       As a preliminary matter, the court finds that the record before it is complete for review

8  despite the initial omission of new medical records submitted to the Appeals Council.  As the

9  plaintiff acknowledges in her response to the Commissioner's sur-reply (ECF No. 28 at 7-10), the

10  commissioner has filed a supplemental administrative record (SAR).  ECF No. 23.  The

11  undersigned believes this moots plaintiff's first challenge.

12       However, even if plaintiff's challenge were not moot, it could not succeed because the

13  additional documents are not properly part of the record for this court's review.  "The

14  Commissioner's regulations permit claimants to submit new and material evidence to the Appeals

15  Council and require the Council to consider that evidence in determining whether to review the

16  ALJ's decision, *so long as the evidence relates to the period on or before the ALJ's decision.*"

17  Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012).  "When the

18  Appeals Council considers new evidence in deciding whether to review a decision of the ALJ,

19  that evidence becomes part of the administrative record, which the district court must consider

20  when reviewing the Commissioner's final decision for substantial evidence."  Id. at 1163.

21  However, if new evidence is submitted to the Appeals counsel and the "evidence did not relate to

22  the period on or before the ALJ's decision, the Appeals Council [is] not required to consider it."

23  Warzecha v. Berryhill, 692 F. App'x 859, 860 (9th Cir. 2017) (memorandum decision).

24       In this case, the Appeals Council's decision indicates that it did not consider any post-

25  hearing evidence.  AR 1-3.  Plaintiff acknowledges in a footnote that the Appeals Counsel may

26  not have received the additional records before rendering its decision.  Additionally, the records

27  themselves demonstrate that they do not relate to the period before the ALJ's decision.  The

28  ALJ's decision was issued on February 13, 2019 ( AR 23), and the SAR contains medical records

spanning March 26-2019 through April 26, 2019 (AR 624-44).  Because the Appeals Council did not, and was not required to, consider the documents contained in the SAR, the court will not consider the documents as part of the administrative record before it.

   B.   The ALJ Erred at Step Two, but Error was Harmless

   Plaintiff argues that the ALJ erred at step two of the sequential evaluation process by failing to find that plaintiff's fibromyalgia, lupus, and sacro-iliac joint dysfunction constitute severe impairments.  ECF No.  14 at 14-21.  The undersigned agrees that the ALJ erred not simply by failing to find these impairments severe, but by failing to even consider any of these impairments at step two.  "The step-two inquiry is a de minimis screening device to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account.  Bowen, 482 U.S. at 153.

   At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c).  "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'"  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96–3p (1996)).  The step-two severity determination is "merely a threshold determination of whether the claimant is able to perform his past work.  Thus, a finding that a claimant is severe at step two only raises a prima facie case of a disability."  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).  In this case the ALJ found that several of plaintiff's impairments (diabetes mellitus, lumbar/lumbosacral region spondylosis without myelopathy or radiculopathy, obesity, and right hip pain and right shoulder pain due to mild osteoarthritis) were severe.  AR 14.  The ALJ did not, however, identify any non-severe impairments.  Id.  The ALJ did not mention lupus or fibromyalgia at step two.

   The ALJ's step-two analysis in this case is deficient because the ALJ failed to mention fibromyalgia, lupus, and sacro-iliac joint dysfunction.  However, because the ALJ found that plaintiff had at least one severe impairment, plaintiff was not prejudiced by any arguable step two error.  See Burch, 400 F.3d at 682 ("Assuming without deciding that [the] omission [of an

7

1   impairment] constituted legal error, it could only have prejudiced Burch in step three ... or step

2   five ... because the other steps, including this one, were resolved in her favor.").  Here, step two

3   was decided in plaintiff's favor, and the ALJ did consider all of plaintiff's alleged impairments in

4   the RFC analysis.  AR 18.  Because all impairments were considered in the RFC, the

5   determination of disability was not impacted by any omission at step two.  There is accordingly

6   no mistake supporting remand.

7        C.   The ALJ Permissibly Rejected a Treating Physician Opinion

8        Plaintiff contends the ALJ erred by failing to give controlling weight to the opinion of

9   plaintiff's treating physician Dr. Jahanguir Mahmoudi, M.D.  ECF No. 14 at 21-24.  As discussed

10  below, plaintiff applies the incorrect standard to the ALJ's determination.  The court finds no

11  legal error.

12       1.   The Medical Evidence

13       The ALJ considered the medical opinions of (1) State agency physicians B. Williams,

14  M.D., and G. Lee, M.D., and (2) treating physician Dr. Jahangir Mahmoudi, M.D.  AR 16-17.

15            a.   Opinion of Dr. Mahmoudi

16       Plaintiff was treated by neurologist/endocrinologist Dr. Mahmoudi for diabetes care.  AR

17  298.  Dr. Mahmoudi completed a diabetes mellitus residual functional capacity questionnaire

18  form on December 12, 2018.  AR 599-604.  The ALJ credited Dr. Mahmoudi's opinion to the

19  extent that Dr. Mahmoudi limited plaintiff to sedentary work consistent with the SSA regulatory

20  requirements of 20 CPR 404.1567.  AR 17.  However, the ALJ found Dr. Mahmoudi's opinion

21  that plaintiff's "symptoms were severe enough to constantly interfere with attention and

22  concentration needed to perform even simple work tasks; needed to take unscheduled breaks for

23  10 minutes at a time to lie down; legs should be elevated 5 inches with prolonged sitting; rarely

24  twist, stoop (bend), crouch/squat, climb ladder and stairs; had significant limitation of only 1 %

25  during an 8-hour workday for repetitive reaching, handling, and fingering with the bilateral

26  hands, fingers and arms; avoid all exposure to extreme cold/heat, high humidity, wetness,

27  cigarette smoke, perfumes, soldering fluxes, solvents/cleaners, fumes, odors, gases, dust, and

28  chemicals; and she would be off task 25% or more in a typical workday" was "unpersuasive as it

1    was solely based on the claimant's reported subjective complaints and directly contradicts his

2    three treatment records on 12/06/2017, 12/20/2017, and 10/08/2018 that found the claimant's

3    diabetes was under good control without any diabetic related complications, AlC level ranged

4    from 7.8% to 8.9%, and her labs were within normal limits."  AR 17, underline citing AR 496-504 602-04.

5                b.  Opinions of Dr. Williams and Dr. Lee

6            Agency physicians Dr. Williams (AR 63-72) and Dr. Lee (AR 85-95) reviewed Plaintiff's

7    records through 2017.  Each found plaintiff could lift and/or carry 20 pounds occasionally and 10

8    pounds frequently, stand, walk, and sit about 6 hours in an 8-hour workday, do unlimited pushing

9    and pulling, climb ramps, stairs, ladders, ropes, and scaffolds occasionally, and balance, stoop,

10    kneel and crouch occasionally.  AR 68-69, 91-92.  They found plaintiff did not have

11    manipulative, visual, or verbal limitations.  AR 69, 92.  They found plaintiff's only environmental

12    restriction was avoidance of concentrated exposure to hazards.  AR 70, 93.  The ALJ found both

13    these opinions persuasive "as they are substantially consistent with each other in findings that the

14    claimant was limited to less than light and their opinions were based on their own review of the

15    claimant's overall medical records from her alleged onset date of April 17, 2017."  AR 16-17.

16            2.  Principles Governing the ALJ's Consideration of Medical Opinion Evidence

17            The parties debate the standard that applies to the ALJ's weighing of medical opinions, an

18    issue that has been impacted by regulatory amendments promulgated by the Social Security

19    Administration ("SSA") for cases filed after March 27, 2017.  The question is whether the

20    amended regulations invalidate the treating physician rule ("TPR") that has long governed the

21    consideration of treating physician opinions in the Ninth Circuit.

22            The TPR provides that "those physicians with the most significant clinical relationship

23    with the Plaintiff are generally entitled to more weight than those physicians with lesser

24    relationships.  As such, the ALJ may only reject a treating or examining physician's

25    uncontradicted medical opinion based on clear and convincing reasons.  Where such an opinion is

26    contradicted, however, it may be rejected for specific and legitimate reasons that are supported by

27    substantial evidence in the record."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155,

28    1164 (9th Cir. 2008) (internal citations omitted).  The 2017 regulations promulgated by the SSA

9

1    eliminate the deference given to treating physicians in this and other Circuits, providing that the

2    SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any

3    medical opinion(s) . . . including those from your medical sources" for claims filed after March

4    27, 2017.  20 C.F.R.  § 416.920c (titled "How we consider and articulate medical opinions and

5    prior administrative findings for claims filed on or after March 27, 2017") (hereafter "new

6    regulation").

7        Plaintiff forwards two arguments in support of her contention that the 2017 amendments

8    do not abolish the TPR: (1) the new regulation is not valid and therefore is not entitled to

9    deference, and (2) even if validly adopted, the new regulation does not override prior caselaw

10   establishing the TPR.  For the reasons now explained, the court rejects both arguments.

11                    a.   The New Regulation is Valid and Entitled to Deference

12       Plaintiff first argues that the new regulation is contrary to the Social Security Act

13   (hereafter "The Act") because it fails the test outlined in Chevron, U.S.A., Inc. v. Nat. Res. Def.

14   Council, Inc., 467 U.S. 837 (1984).  In Chevron, the Supreme Court established a two-step

15   analysis to determine the validity of agency regulations.  Chevron, U.S.A., Inc., 467 U.S. at 844.

16   The first step looks to the statute and determines whether Congress explicitly states how the

17   statute should be interpreted.  If the statute is explicit, then congressional intent is clear and there

18   is nothing further for the courts to interpret.  If the statute is not explicit, then Congress left room

19   for the administering agency to interpret the statute; the question then becomes "whether the

20   agency's answer is based on a permissible construction of the statute."  Id. at 843.  A permissible

21   interpretation is one that is not arbitrary, capricious, or manifestly contrary to the statute.  Id.

22   When a statute and associated agency regulation meet these qualifications, the court must defer to

23   the agency's regulation under the doctrine known as "Chevron deference."  See, e.g., Barnhart v.

24   Walton, 535 U.S. 212, 222 (2002) (granting Chevron deference to Social Security Administration

25   interpretation of 12-month duration requirement for disability benefits.)

26                    i.   The Statute Allows the SSA to Prescribe Standards for the

27                         Consideration of Medical Opinion Evidence

28       The Social Security Act does not provide explicit requirements for the weighing of

10

1    medical opinions, and it does not expressly require treating physicians be given preferential

2    treatment.  Because the statutory language does not explicitly state how the Act is to be applied in

3    this context, Congress has left room for the SSA to interpret the statute.  Plaintiff asserts that

4    statutory language requiring the SSA to "make every reasonable effort to obtain from the

5    individual's treating physician medical evidence" is evidence that the statute itself prioritizes

6    treating physicians over other medical professionals.  ECF No. 28 at 2.  However, even though

7    the statute directs the SSA to obtain medical evidence from treating physicians, it does not direct

8    the SSA to prioritize that evidence.  Accordingly, the undersigned finds under the first step of the

9    Chevron analysis that the statute is ambiguous as to the weighing of treating physician opinions,

10   and the SSA's interpretation must therefore be evaluated for arbitrariness.

11          Bolstering this conclusion is the fact that the Act gives express and considerable deference

12   to the SSA to define its application generally.  "The Commissioner of Social Security shall have

13   full power and authority to make rules and regulations and to establish procedures, not

14   inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry

15   out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and

16   provide for the nature and extent of the proofs and evidence and the method of taking and

17   furnishing the same in order to establish the right to benefits hereunder."  42 U.S.C. § 405(a).

18   The Supreme Court has repeatedly recognized that the Act (specifically 42 U.S.C. § 405(a))

19   confers "exceptionally board authority" on the SSA to prescribe the standards for establishing

20   disability.  Bowen, 482 U.S. at 145 (internal quotations and citations omitted); Heckler v.

21   Campbell, 461 U.S. 458, 466 (1983); Schweiker v. Gray Panthers, 453 U.S. 34, 43 (1981).

22   Because the agency is clearly within its power to fill an explicit gap in the statute, the new

23   regulations are a permissible interpretation if they are not arbitrary, capricious, or contrary to the

24   statute.

25                          ii.   The New Regulation is Not Arbitrary or Capricious

26          An agency regulation is "arbitrary and capricious if the agency has relied on factors

27   which Congress has not intended it to consider, entirely failed to consider an important aspect of

28   the problem, offered an explanation for its decision that runs counter to the evidence before the

1   agency, or is so implausible that it could not be ascribed to a difference in view or the product of

2   agency expertise." <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>,

3   463 U.S. 29, 43 (1983).  An agency's determination will be upheld if it is "supportable on any

4   rational basis," particularly "when an agency is acting within its own sphere of expertise."

5   <u>McFarland v. Kempthorne</u>, 545 F.3d 1106, 1113 (9th Cir. 2008) (quoting <u>Voyageurs Nat. Park</u>

6   <u>Ass'n v. Norton</u>, 381 F.3d 759, 763 (8th Cir. 2004).

7        The SSA was plainly acting within its sphere of expertise by promulgating regulations

8   regarding the weighing of evidence in disability determinations, and there is no evidence in the

9   record of arbitrary agency action.  Indeed, plaintiff's allegation of arbitrariness is wholly

10  rhetorical.  No evidence has been presented that the agency acted for an improper purpose or on

11  an impermissible basis, that it relied on factors which Congress has not intended it to consider,

12  that it entirely failed to consider an important aspect of the problem, offered an explanation for its

13  decision that runs counter to the evidence before the agency, or that its stated rationale is so

14  implausible as to be inherently suspect.  Accordingly, the new regulation cannot be considered

15  arbitrary or capricious.

16                iii.   <u>The New Regulation is Not Contrary to the Statute</u>

17       The new regulation denies deference to any specific category of medical opinion, and

18  provides new articulation requirements for the evaluation of medical evidence.  Neither of these

19  components of the new regulation is manifestly contrary to the statute.   First, the new regulation

20  explicitly states that the SSA "will not defer or give any specific evidentiary weight, including

21  controlling weight, to any medical opinion(s)" when evaluating claims filed after March 27, 2017.

22  20 C.F.R. § 416.920c(a).  Rather than placing significance on the source proffering the opinion,

23  the "most important factors" the ALJ will consider in weighing a medical opinion are its

24  "supportability" and "consistency."  <u>Id.</u>

25       The Act itself contains one provision relevant to the ALJ's evaluation of medical

26  evidence: 42 U.S.C. § 423(d)(5)(B).  Section 423(d)(5)(B) states that the Commissioner "shall

27  make every reasonable effort to obtain from the individual's treating physician (or other treating

28  health care provider) all medical evidence, including diagnostic tests, necessary in order to

1    properly make such determination, prior to evaluating medical evidence obtained from any other

2    source on a consultative basis."  Plaintiff argues that this language demonstrates that Congress

3    recognized the "special nature" of the treating relationship.  ECF No. 19 at 15.  The court takes a

4    somewhat different view.  Yes, Congress recognized the significance of treatment records to the

5    disability determination, and the statutory language is consistent with due respect for the role of

6    treating professionals.  But § 423(d)(5)(B) does not require deference to a treating source.

7    Rather, the Act requires that the Commissioner try to obtain and evaluate evidence from a treating

8    source prior to evaluating other sources.  The new regulation does not eliminate this requirement,

9    nor does it preclude the Commissioner from giving decisive weight to a treating source in a

10   particular case.  20 C.F.R. § 416.920c.  It eliminates only a categorical presumption that a treating

11   source is entitled to more weight—a presumption which is not required anywhere in the Act

12   itself.  Id.  Accordingly, the new regulation is not contrary to 42 U.S.C. § 423(d)(5)(B).  Under

13   the new regulation, all medical evidence starts on equal footing and must be evaluated in its case-

14   specific context and on its case-specific merits.  This approach is entirely consistent with the Act.

15        Plaintiff also argues that the new regulation's "articulation requirements" are contrary to

16   the Act.  The court disagrees.  The Act requires any decision denying disability to contain "a

17   statement of the case, in understandable language, setting forth a discussion of the evidence, and

18   stating the Commissioner's determination and the reason or reasons upon which it is based."  42

19   U.S.C. § 405(b)(1).  The new regulation builds on this articulation requirement in three ways.

20   First, it provides for "source-level articulation:" the ALJ may consider multiple medical opinions

21   from a single medical source together in one analysis.  20 C.F.R. § 416.920c(b)(1).  Second, it

22   requires "most important factors" articulation, in which the ALJ must explain how the agency

23   considered the supportability and consistency of a medical opinion.  Finally, if there are equally

24   persuasive medical opinions, it requires the agency to articulate how it considered those opinions

25   and reached its ultimate decision.  20 C.F.R. § 416.920c(b).  The new regulation also identifies

26   specific factors to be considered when evaluating medical opinions—such as the relationship of

27   the source with the claimant and the length of the relationship—but does not require explicit

28   articulation of those considerations.  20 C.F.R. § 416.920c(c); 20 C.F.R. § 416.927(c).

13

Though the new regulation eliminates the need to articulate specific reasons for discounting a treating source, it provides for different, additional articulation requirements, like explicit consideration of the consistency of the medical opinion with the rest of the medical evidence.  20 C.F.R. § 416.920c(b).  The new regulation does not allow the ALJ to forego articulation of their "reason or reasons" altogether; rather, it provides specific articulation requirements.  It is therefore not contrary to the Act.

For all the reasons explained above, the court finds that the new regulation is valid, and that <u>Chevron</u> deference applies.[4]

### b.   The New Regulation Displaces Contrary Pre-Existing Caselaw

Having found that the new regulation is entitled to <u>Chevron</u> deference, the court turns to the question whether the treating physician rule established by prior Circuit caselaw survives the regulation or is overridden by it.  It is a corollary of the <u>Chevron</u> doctrine that, because agencies and not judges are experts in the field, a prior judicial construction of a statute will supersede an agency's interpretation only in very narrow circumstances.  <u>Chevron, U.S.A., Inc.</u>, 467 U.S. at 865.  The Supreme Court has held that "prior judicial construction of a statute trumps an agency construction otherwise entitled to <u>Chevron</u> deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."  <u>Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.</u>, 545 U.S. 967, 982 (2005).

The Ninth Circuit's prior construction of the Social Security Act, recognizing the TPR, was not derived from the unambiguous terms of the statute.  As noted above, there is no such unambiguous statutory language.  The TPR evolved with the Court's interpretation of the statutory provision that courts can only overturn a decision if it is unsupported by substantial evidence.  <u>See</u> 41 U.S.C. § 405(g).  In 1975, the Ninth Circuit held that agency adjudicators had

---

[4]  Plaintiff also argues at some length that the policy rationale for the 2017 regulations is not compelling.  ECF No. 19 at 17-22.  The wisdom of the regulations is not subject to judicial review.  This court is limited to the question whether the agency was permissibly exercising its regulatory authority, and may not overturn validly-enacted regulations on grounds they are wrong-minded.

1    to articulate "clear and convincing reasons" for rejecting the "uncontradicted" opinion of a

2    treating doctor, implying a deference to treating sources.  Day v. Weinberger, 522 F.2d 1154,

3    1156 (9th Cir. 1975).  Neither Day nor other early TPR cases cited statutory language mandating

4    such deference.  Rather, like other federal Courts of Appeals, the Ninth Circuit concluded that a

5    decision which ignores evidence provided by a treating physician cannot be supported by

6    substantial evidence.  See Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983).

7            After several other circuits adopted their own versions of the TPR as a rule for weighing

8    medical evidence, the Ninth Circuit followed suit.  In 1983, our Circuit agreed with the Fifth,

9    Sixth and Second Circuits' practice of giving greater weight to the opinions of treating physicians

10   because of their "greater opportunity to observe and know that patient as an individual."  Murray

11   v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).  As the Supreme Court succinctly explained, "[t]he

12   treating physician rule . . . was originally developed by Courts of Appeals as a means to control

13   disability determinations by administrative law judges under the Social Security Act."  Black &

14   Decker Disability Plan v. Nord, 538 U.S. 822, 829 (2003).

15          "In 1991, the Commissioner of Social Security adopted regulations approving and

16   formalizing use of the rule in the Social Security disability program."  Id.  In promulgating the

17   SSA rules of 1991, the agency noted that "[n]one of the circuit courts of appeals has held that its

18   treating physician rule is required by the Act or Constitution."  Final Rules, Standards for

19   Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 (1991).  The 2017

20   regulations at issue here changed the Agency's approach.  The Agency is free to make such

21   changes, despite extant caselaw, where the judicial interpretations were not themselves compelled

22   by the statutory language.  See Brand X, supra, 545 U.S. at 982.

23          The Ninth Circuit has recognized that the Social Security Administration may, by

24   regulation, override the court's own prior interpretations of the Act.  In Lambert v. Saul, 980 F.3d

25   1266 (9th Cir. 2020), the Court of Appeals addressed the conflict between its precedent

26   establishing a presumption of continuing disability after a prior disability determination, and the

27   SSA's interpretation of the 1983 Reform Act which found that no such presumption was available

28   under the statute.  Id. at 1268.  In deferring to the agency's interpretation despite its own contrary

15

1   precedent, the Lambert court noted that there are limited circumstances in which a court's own

2   precedent is not controlling, and the court is in fact required to depart from it.  Id.  "Those

3   circumstances include the intervening higher authority of an administrative agency's authoritative

4   and reasonable interpretation of a statute."  Id.  Finding first that the SSA's interpretation was

5   entitled to deference under Chevron, the Court of Appeals further concluded that "the SSA's

6   authoritative interpretation of the Social Security Act displaces our prior precedents on the issue

7   of a presumption of continuing disability."  Id. at 1275.  This conclusion was compelled by Brand

8   X, because the Ninth Circuit precedents adopting the presumption had been based on the

9   persuasive authority of other Circuit Courts of Appeals and not on any mandatory language of the

10  statute that foreclosed agency interpretation.  Id.  The TPR was likewise adopted by the Ninth

11  Circuit based on the persuasive authority of other Circuit Courts of Appeals and not on any

12  mandatory language of the statute that foreclosed agency interpretation.  Accordingly, the

13  undersigned concludes that the new regulations regarding the evaluation of medical opinion

14  evidence displace the Ninth Circuit's prior precedents implementing the TPR.

15  Few courts have yet addressed the question whether the 2017 regulations displace the TPR, but

16  Brand X and Lambert provide a clear path.  "Only a judicial precedent holding that the statute

17  unambiguously forecloses the agency's interpretation, and therefore contains no gap for the

18  agency to fill, displaces a conflicting agency construction."  Brand X, 545 U.S. at 982-983.  None

19  of the Ninth Circuit's TPR cases constitute such a precedent.  Accordingly, the agency was free to

20  displace the judicially created rule by regulation.  See Lambert, 980 F.3d at 1268, 1275.  In sum,

21  because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute,

22  (2) the prior judicial construction was not mandated by the governing statutory language to the

23  exclusion of a differing agency interpretation, and (3) the TPR is inconsistent with the new

24  regulation, the court concludes that the 2017 regulations effectively displace or override

25          3.   The ALJ Permissibly Rejected the Treating Physician Opinion

26          Having established that the 2017 regulations control, the court turns to the ALJ's

27  evaluation of Dr. Mahmoudi's opinion.  The ALJ found that Dr. Mahmoudi's opinion was not

28  consistent with the record, and was not well explained or supported.  AR 17.  The ALJ thus

1    addressed the two key factors identified in the 2017 regulations. 20 C.F.R. § 404.1520c(b)(2)

2    ("Therefore, we will explain how we considered the supportability and consistency factors for a

3    medical source's medical opinions or prior administrative medical findings in your determination

4    or decision.").

5       The ALJ accurately found that Dr. Mahmoudi's opinion was based on plaintiff's

6    subjective complaints and was inconsistent with his own treatment notes showing controlled

7    diabetes and normal laboratory findings (AR 17, citing AR 498 (10/8/18: noting diabetes under

8    good control and normal laboratory findings), 500 (12/20/17: noting normal laboratory findings),

9    503 (12/6/17: noting normal laboratory findings)). The ALJ discussed Dr. Mahmoudi's treatment

10    records in some detail, demonstrating the contrast between the opinion and the doctor's own

11    records. AR 20. Inconsistency between a physician's opinion and his or her own treatment notes

12    has long been recognized as an acceptable reason to discount such opinion. Valentine v. Comm'r

13    Soc. Sec. Admin., 574 F.3d 685, 692–93 (9th Cir. 2009) (holding that contradiction between a

14    treating physician's opinion and his treatment notes constitutes a specific and legitimate reason

15    for rejecting the treating physician's opinion); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir.

16    2005) (holding that contradiction between treating physician's assessment and clinical notes

17    justifies rejection of assessment). Because Dr. Mahmoudi's opinion was not consistent with his

18    treatment notes, the ALJ reasonably found it not persuasive. See 20 C.F.R. § 404.1520c(c)(2).

19       The ALJ also permissibly discounted Dr. Mahmoudi's opinion based on the observation

20    that it was overly reliant on plaintiff's subjective complaints. "If a treating provider's opinions

21    are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ

22    finds the applicant not credible, the ALJ may discount the treating provider's opinion. However,

23    when an opinion is not more heavily based on a patient's self-reports than on clinical

24    observations, there is no evidentiary basis for rejecting the opinion." Ghanim v. Colvin, 763 F.3d

25    1154, 1162 (9th Cir. 2014) (internal citation omitted). As discussed above, the ALJ properly

26    found that Dr. Mahmoudi's records do not support the limitations he assigned in the diabetes

27    questionnaire. Dr. Mahmoudi treated plaintiff specifically for diabetes, so to the extent that he

28    opined on limitations resulting from conditions other than diabetes, he apparently relied on

1   plaintiff's subjective reports.  AR 502 (noting endocrine consultation with Dr. Mahmoudi and

2   referral to him to treat diabetes).

3          Dr. Mahmoudi's overreliance on plaintiff's subjective reporting is clear because his own

4   examinations were normal and did not warrant the degree of limitations assigned.  Turner v.

5   Comm'r of Soc. Sec., 613 F.3d 1217, 1223 (9th Cir. 2010) (noting, under the former regulations

6   and case law, that an ALJ properly concluded that a treating source relied on subjective

7   complaints when no objective evidence supported his opinion).  Dr. Mahmoudi found intact

8   neurological functioning, with normal coordination and gait (AR 503), and otherwise reviewed

9   only normal laboratory findings (AR 500, 503).  As to lupus or fibromyalgia, his examinations

10  and laboratory findings showed nothing to support any symptoms or limitations, so he had to rely

11  instead on plaintiff's reports.  To the extent that Dr. Mahmoudi noted abnormal x-ray of the spine

12  (AR 601), the x-rays were benign, showing mild retrolisthesis (AR 346) and mild degenerative

13  disease (AR 461), which Dr. Lee concluded supported a light RFC (AR 89 (citing x-rays as a

14  basis for light RFC opinion)).  The overreliance on plaintiff's subjective complaints was an

15  appropriate rationale for the ALJ to discount Dr. Mahmoudi.

16          D.  The ALJ Properly Addressed Plaintiff's Subjective Testimony

17          Plaintiff alleges the ALJ improperly discredited her subjective pain testimony by (1)

18  failing to use clear and convincing evidence to discredit plaintiff; (2) effectively requiring

19  objective evidence for fibromyalgia, "a disease that eludes such measurement," (Benecke v.

20  Barnhart, 379 F.3d 587, 594 (9th Cir. 2004)); and (3) failing to identify exactly what testimony

21  was not credible and what specific evidence undermined that testimony.  ECF No. 14 at 24-25.

22  Upon review of the record, the court agrees with defendant that the ALJ properly addressed

23  plaintiff's subjective testimony.

24          "To determine whether a claimant's testimony regarding subjective pain or symptoms is

25  credible, an ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028,

26  1035–36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented

27  objective medical evidence of an underlying impairment 'which could reasonably be expected to

28  produce the pain or other symptoms alleged.'"  Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d

18

341, 344 (9th Cir. 1991)).  "Second, if the claimant meets this first test, and there is no evidence

of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms

only by offering specific, clear and convincing reasons for doing so."  Id. (citations omitted)

(quotation marks omitted).  Further, "[t]he ALJ may not reject subjective symptom testimony . . .

simply because there is no showing that the impairment can reasonably produce the degree of

symptom alleged."  Lingenfelter, 504 F.3d at 1035–36 (quoting Smolen, 80 F.3d at 1282); cf.

Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("Once the claimant produces medical

evidence of an underlying impairment, the Commissioner may not discredit the claimant's

testimony as to the severity of symptoms merely because they are unsupported by objective

medical evidence." (citing Bunnell, 947 F.2d at 343)).  A claimant is not required to "produce

'objective medical evidence of the pain or fatigue itself, or the severity thereof.'"  Garrison v.

Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting Smolen, 80 F.3d at 1282).

Plaintiff testified that she has difficulty typing because of swollen hands and difficulty

moving her fingers (AR 46), has swelling in her hands and feet (AR 45-48), has trouble walking

because her feet are painful, tingling, and burning (AR 47) and is very fatigued (AR 49).  The

ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause

the alleged symptoms, but that her allegations regarding the persistence, intensity, and limiting

effects were inconsistent with (1) the objective medical evidence, showing at most mild

abnormalities in imaging studies and normal physical examinations; (2) her lack of treatment for

allegedly disabling autoimmune conditions; and (3) her significant improvement from treatment

for diabetes and pain.  AR 16-21.

First, the court agrees with defendant that the ALJ's decision to discredit plaintiff on the

basis on contradictory medical evidence is appropriate, so long as it is not the only basis on which

plaintiff is discredited.  Ninth Circuit case law has consistently affirmed ALJs' reliance on

objective evidence as *one factor* for rejecting symptom allegations.  Burch, 400 F.3d at 681

(affirming the ALJ's rejection of symptom allegations for being inconsistent with objective

imaging).  Here, the ALJ noted that plaintiff's claims of disabling pain (AR 45, 55, 233) were

inconsistent with x-rays showing only mild abnormalities in her sacroiliac joints (AR 16, citing

1    AR 428-29); x-rays showing at most mild degenerative disease in her lumbar spine and no

2    abnormalities in her hip and pelvis (AR 16, citing AR 441); and x-rays showing no abnormalities

3    in her hands (AR 16, citing AR 573-74).  These benign imaging studies undermine plaintiff's

4    alleged disabling low back pain.  See Burch, 400 F.3d at 681.  This contradictory medical

5    evidence combined with the ALJ's finding that plaintiff's ailments were effectively alleviated by

6    treatment, as discussed below, constitutes a clear and convincing reason for discrediting

7    plaintiff's subjective testimony.

8            Second, the court rejects plaintiff's argument that discounting her fibromyalgia claim for

9    lack of objective evidence is improper under Benecke v. Barnhart, which indicates it is error to

10   require objective evidence for a "disease that eludes such measurement."  Benecke, 379 F.3d at

11   594.  ECF No. 14 at 25.  Plaintiff's interpretation of Beneke takes its reasoning too far —

12   following plaintiff's logic, raising fibromyalgia would always preclude a finding of non-

13   disability.  In this case, the ALJ pointed to the fact that fibromyalgia is almost entirely absent

14   from the record.  AR 18.  The ALJ noted that the entirety of the evidence related to fibromyalgia

15   consists of  one physical examination showing 12 of 16 trigger points on 05/04/2017 with no

16   other fibromyalgia related workups, examinations or follow-up treatments in the records since

17   that date.  AR 18, 316-18 (examination date), 396 (plaintiff reports history of fibromyalgia and

18   lupus, but neither diagnoses listed on active problem list), 477-88 (rheumatologist visit report

19   noting plaintiff "does not have any features [consistent with] lupus" and advises "stretching

20   exercises and warm water aerobics" for fibromyalgia pain, along with follow-up with a pain

21   specialist (AR 485)).  Plaintiff is correct that evaluating claims of pain related to fibromyalgia

22   requires special care; "evaluating whether a claimant's residual functional capacity renders them

23   disabled because of fibromyalgia, the medical evidence must be construed in light of

24   fibromyalgia's unique symptoms and diagnostic methods."  Revels v. Berryhill, 874 F.3d 648,

25   662 (9th Cir. 2017).  However, noting that the record contains minimal references to and

26   treatments for the conditions is not the same thing as requiring objective evidence such as x-rays

27   or definitive test results.  "The ALJ is permitted to consider lack of treatment in his credibility

28   determination credibility determination"  Burch, 400 F.3d at 681.

1    Third, the ALJ provided clear and convincing evidence for rejecting plaintiff's testimony

2    by pointing to the documented efficacy of treatment.  The ALJ noted that treatment records

3    confirmed that plaintiff's diabetes improved with treatment (AR 20, citing AR 502, 504; see also

4    AR 498 (diabetes under good control October 2018)).  The ALJ noted plaintiff had significant

5    relief for her pain from nerve blocks in December 2018 and January 2019 (AR 20, citing AR 607

6    (nerve block performed December 2018, noted greater than 80% improvement and improved

7    range of motion in all axes), AR 616 (January 2019 nerve block, noted greater than 80% relief

8    from last one and improved range of motion in all axes)).  Because Plaintiff's allegedly disabling

9    impairments were amenable to treatment, the ALJ reasonably rejected plaintiff's claims that they

10   disabled her.  See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006)

11   ("[i]mpairments that can be controlled effectively with medication are not disabling for the

12   purpose of determining eligibility for SSI benefits").

13   Finally, the court rejects plaintiff's argument that the ALJ did not specify what portions of

14   plaintiff's testimony were undermined and therefore rejected.  This assertion is clearly

15   contradicted by the opinion itself.  For example, the ALJ references plaintiff's claim that swelling

16   in her hands prevents her from using a keyboard/keypunch before noting that bilateral hand

17   imagery showed no abnormalities to support her complaints.  AR 19.  It is simply untrue that the

18   ALJ lacked specificity in explaining how subjective pain complaints were undermined.  The ALJ

19   did not err in discrediting plaintiff's subjective testimony.

20   E.   The RFC Assessment and Finding Regarding Performance of Past Relevant Work Are

21        Adequately Supported

22   Plaintiff's final two arguments, that the ALJ's opinion regarding plaintiff's ability to

23   perform past relevant work lacks substantial evidence, and that the RFC is not based on

24   substantial evidence, are underdeveloped and dependent on her prior arguments.  ECF No. 14 at

25   26-29.  Because the court has already determined that the ALJ properly addressed the medical

26   opinion testimony and plaintiff's subjective testimony, and plaintiff's final two arguments are

27   repetitive of those points, plaintiff fails to demonstrate error here as well.

28   With respect to the RFC, plaintiff again contends that the ALJ was required to accept the

1  limitations of Dr. Mahmoudi, and that plaintiff's fibromyalgia, lupus, and SI joint dysfunction

2  were not properly included in the RFC.  ECF No. 14 at 27.  Plaintiff also argues that the ALJ

3  improperly gave too much weight to non-examining medical opinions.  Id. at 28.  Each of these

4  arguments is addressed and rejected above.  With respect to the ALJ's finding on plaintiff's

5  ability to perform past relevant work, plaintiff argues that the conclusion is erroneous because the

6  hypotheticals posed to the vocational expert were based on an erroneous RFC.  Id. at 29.  Because

7  the court finds no error with respect to the RFC, this argument necessarily fails.

8                                        VII.  CONCLUSION

9          For the reasons set forth above, IT IS HEREBY ORDERED that:

10         1.  Plaintiff's motion for summary judgment (ECF No. 14), is DENIED;

11         2.  The Commissioner's cross-motion for summary judgment (ECF No. 18), is

12  GRANTED; and

13         3.  The Clerk of the Court shall enter judgment for defendant and close this case.

14  DATED: February 16, 2021

15                                     _____

16                                     ALLISON CLAIRE
                                       UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28